## Miller Estate

*John M. Duff,* for Commonwealth.
*Harbaugh Miller,* for executor.

McKENNA, P. J., June 25, 1974.—This case is before us on exceptions filed by the executor of decedent's estate on April 10, 1974, to the order of this court dated April 2, 1974. That order dismissed the executor's appeal from a tax appraisement made by the Commonwealth of Pennsylvania for inheritance tax purposes. We agree with the order made by the hearing judge and his opinion in support of same. However, we will state the facts briefly and our additional reasons for concurrence.

Dorothy Miller died testate on May 13, 1972, and on May 24th of that year letters testamentary were issued to Harbaugh Miller, the executor named. Decedent was single and her sole legatee is a friend of hers, Anna E. Bingham. An inventory filed indicates that decedent's personal estate amounted to $47,450.28. She was possessed of no real estate. An account was filed on February 20, 1973. This came before the court for audit, and on May 2, 1973, a decree was made awarding the balance of personalty, $28,316.45, to the sole legatee.

On November 29, 1973, the Commonwealth appraised for taxation the following asset:

"Transfer not part of estate—Taxable.

'Teachers Insurance & Annuity Association Contract # A116 143—date of death value $24,631.21 (one-half includible).' $12,315.61"

The executor appealed from the appraisement to this court, alleging that the Department of Revenue had erroneously included the aforesaid contract for the reason that, under the terms of same between decedent and Teachers Insurance and Annuity Association, also referred to as T.I.A.A., decedent did not have the right to possess, enjoy, assign or anticipate payments.

The parties entered into a stipulation whereby they agreed to the following pertinent facts:

1. Decedent was a member of the faculty of the University of Pittsburgh at the time of her death;

2. On November 1, 1957, she entered into the above described contract with T.I.A.A.;

3. Contributions under the contract were made equally by the University of Pittsburgh and decedent;

4. No payments were made to decedent in her lifetime;

5. Although not specifically provided in the contract, it has been the policy of T.I.A.A. upon retirement of a

faculty member before normal retirement age to set up an annuity based on contributions made, and if these are not sufficient to justify the setting up of an annuity, to return to the faculty member his or her contributions; ·

6. The contract provides that in the event of decedent's death before annuity payments begin, the association will make payments to the named beneficiary, Anne E. Bingham;

7. The contract contains this clause: "No cash or loan value. This contract is for the purpose of furnishing a retirement annuity. It contains no provision for cash surrender and the association will not make a loan upon the security of this contract."

The inheritance tax is imposed pursuant to the provisions of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485-101, et seq. The tax is levied on the value of the property of decedent passing to his heirs or devisees and legatees in excess of the deductions listed in the act: Section 301. In the case of collateral heirs, as in the case before us, the rate of the tax is 15 percent: Section 404.

Section 316 of the statute provides, in part, as follows:

"Payments under pension, stock-bonus or profit-sharing plans, to distributees designated by decedent or designated in accordance with the terms of the plan, other than the estate of the decedent, are exempt from inheritance tax to the extent that decedent before his death did not otherwise have the right to possess (including proprietary rights at termination of employment), enjoy, assign or anticipate the payments so made."

An amendment to this section, Act of January 20, 1968, P.L. (1967) 1031, provides that:

"in addition to the above exemption, such payments are also exempt from inheritance tax to the same extent as such payments are exempt from Federal estate tax under the provisions of the Internal Revenue Code of 1954, as amended, any supplement thereto, or any similar provision in effect from time to time for Federal estate tax purposes."

Under section 2039(c) of the Internal Revenue Code of 1954, as amended, there is excluded from the gross estate of a decedent for estate tax purposes that part of a pension fund which has been contributed by the employer.

In the case before us then, we must determine first if the fund is taxable under section 316 of the Act of 1961; and second, if the amendment of 1968 changes the result.

Section 19 of the contract between decedent and T.I.A.A. provides that the teacher has certain optional annuities available. At any time before annuity payments begin, the annuitant may elect to receive such annuity as the contributions made to the date of election will permit.

In view of paragraph 19 of the contract, decedent did have the right to "enjoy" contributions made to the fund prior to her death. These include those contributions made by the employer, as well as those made by the teacher. We note that the stipulation provides, in paragraph 5 thereof, that T.I.A.A. does grant such benefits, "although not specifically provided in the contract." As we read the contract, it does provide for the benefits which the parties have stipulated are paid gratuitously. Accordingly, we find that the annuity would be taxable under section 316, supra. However, the exemption provided for in section 316 is enlarged by the 1968 amendment, which provides that such annuities are exempt in the same manner as under

Federal law. Under Federal law, those proceeds of the fund attributable to the employer's contributions are exempt. In this case, the employer's contributions amount to 50 percent of the fund, which is the percentage the Commonwealth appraised.

We conclude, therefore, that the appraisement as made is correct, and that the decision of the hearing judge so holding must be affirmed.

It will be so ordered.